**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JOSHUA STROMINSKI,    )<br>         Plaintiff,    )<br>                                 )<br>    v.                             )     Cause No.: 2:15-CV-122-PRC<br>                                 )<br>ARCELORMITTAL USA, LLC,    )<br>         Defendant.          ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant ArcelorMittal USA, LLC's Motion for Summary Judgment [DE 40] and on Defendant ArcelorMittal USA LLC's Request for Oral Argument on Its Motion for Summary Judgment [DE 42]. Both motions were filed on March 14, 2017. For the reasons stated below, the Court grants the Motion for Summary Judgment and denies the Motion for Oral Argument.

## PROCEDURAL BACKGROUND

Plaintiff Joshua Strominski initiated this cause of action in Lake County, Indiana, Circuit Court on February 17, 2015, by filing a Complaint. Defendant ArcelorMittal USA, LLC ("ArcelorMittal") filed a Notice of Removal to this Court on March 31, 2015. In the Complaint, Strominski alleges that he suffered damages due to ArcelorMittal's negligence.

On March 14, 2017, ArcelorMittal filed the instant Motion for Summary Judgment and a memorandum in support. On April 24, 2017, Strominski filed a response to the Motion for Summary Judgment only, and ArcelorMittal filed a reply on May 16, 2017. Strominski did not file a response to the Motion for Oral Argument. Both motions are ripe for ruling.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure require that a motion for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate when no material fact is disputed and the moving parties are entitled to judgment as a matter of law, meaning that no reasonable jury could find for the other party based on the evidence in the record." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56 (a), (c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). When the nonmoving party would have the burden of proof at trial,

2

the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Spierer*, 798 F.3d at 507-08; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013).

"Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(c)(1), (e); *Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1986)). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-50.

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth

3

of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

ArcelorMittal entered into a contract with Tranco Industrial Services, Inc. ("Tranco") for Tranco to provide industrial services to ArcelorMittal, including pre-wetting, salting, snow plowing, and hand shoveling services to ArcelorMittal's Indiana Harbor facility in East Chicago, Indiana. The contract does not provide for paving, repaving, or other structural maintenance of roadways on ArcelorMittal's property. Tranco hired Strominski as an operator to plow snow. He worked the night shift from 7:00 p.m. to 7:00 a.m.

Prior to working for Tranco, Strominski had been plowing snow for at least fifteen years. He had experience using a variety of payloaders with buckets ranging in capacity from 1.5 to 8 yards. He has been a member of the heavy equipment operator's union since 1998. He used a 938G mid-sized payloader while working as an operator for Tranco. Strominski was taught that, when plowing snow, the front edge of the bucket should be raised off of the ground so that the bucket should roll over any object under the snow. Strominski testified that he tries to get the front edge two to three inches off of the ground.

Strominski's job as an operator at ArcelorMittal's facility was to follow Tranco's laborers around the plant and to clear areas of snow as directed by the laborers. Strominski reported to Tranco to receive his job assignments. When Strominski was initially hired by Tranco, he attended an orientation held by Tranco. The orientation covered job duties and safety.

The incident at issue occurred on February 17, 2014, at ArcelorMittal's Indiana Harbor facility. Strominski's shift began at 7:00 p.m., and the incident occurred around 9:15 p.m.

4

Strominski testified that he had probably already cleared two to four other areas, that the night was windy and cold, and that the area where the incident occurred was poorly lit. There were approximately eight to ten inches of snow on the ground.

Tranco laborers directed Strominski to clear the area at issue, which he describes as a roadway. Strominski plowed snow in one direction, dumped the snow in the payloader's bucket, turned around, and plowed over the same path in the opposite direction. While plowing over the same area after turning around, Strominski struck a manhole cover that was raised above the ground. There were six to eight feet of missing road pavement leading up to the manhole cover in the direction of Strominski's travel when he hit the manhole cover. The road on the other side of the manhole cover is paved. There was a dip at the point of the missing pavement, which caused the manhole cover to be raised above the ground. The payloader's bucket struck the manhole cover, and Strominski's head struck a handle in the payloader's cab and his knees hit the payloader's dashboard. Strominski testified that the manhole cover was flush with the pavement as he traveled over it on the first pass, but that on the return trip his bucket went into the dip in the road and hit the manhole cover. Strominski testified that, in his experience, when he had encountered similar areas in the past, they were barricaded. Strominski claims injuries to his head, right knee, and lower back.

ArcelorMittal process manager Charles Bennett testified as follows. Tranco does track maintenance for ArcelorMittal. Tranco's general foreman would go to ArcelorMittal to determine where Tranco's snow removal crews should be disbursed. Every contractor working at the plant uses a work authorization form. The form lists the hazards for the area where the work is to be performed, and these hazards are disclosed to the contractor's employees, who acknowledge the hazards by signing the form. Ross Berg and Edward Medina, both Tranco employees, signed the work

5

authorization form, and it was their responsibility to communicate the safety hazards to Strominski on the night of the incident. The area with the missing pavement looks like it was originally paved, was later broken up, and left unpaved. The area was not a main roadway at the Indiana Harbor site and is not a normal travel area for the workforce. ArcelorMittal was unable to locate any work records relating to work that caused the pavement to be removed from the area at issue. Bennet further testified that he would not leave such an area unpaved indefinitely and that he would put up warning signs. He also testified that these actions are standard construction practice for everyone's safety, as traveling over such an area could jar a vehicle. He testified that this specific raised manhole cover was, in his opinion, a tripping hazard to pedestrians.

Tim Beck, Vice President of Administration for Tranco, testified as follows. Tranco's primary work for ArcelorMittal is rail track construction and maintenance. In the winter, this includes snow removal, limited to maintaining the tracks, cleaning switches, and removing snow so that locomotives can run. Tranco's snow plowing responsibilities are limited to being able to get access to the tracks. He characterized the surfaces plowed by Tranco as unpaved or partially paved. Beck estimated that Tranco began working at ArcelorMittal's Indiana Harbor facility in 2002 or 2003. Tranco told its employees to drive at a safe speed based on the conditions and gave the operators some discretion in determining what a safe speed is for the machines they are operating. Tranco's regular employees receive winter snow training every year. Topics of the training include defensive driving and exposure. Tranco was generally aware of ground defects at the Indiana Harbor facility, but nobody at Tranco—including Beck—considered the raised manhole cover to be a hazard. Beck was not aware of any prior incidents involving that manhole cover. In general, Tranco would make ArcelorMittal aware of ground defects in areas where Tranco was working. To the best

6

of Beck's knowledge, no one at Tranco notified ArcelorMittal about the manhole cover at issue prior to Strominski's incident. Strominski filled out a work authorization form prior to beginning work on February 17, 2014. Beck is unaware of any other complaints about the manhole cover at issue during the approximate decade that Tranco has been working at the Indiana Harbor facility.

Tranco Foreman/General Foreman Ross Berg testified as follows. He is responsible for handing out assignments to Tranco employees at the Indiana Harbor facility after hearing from ArcelorMittal what its needs are. ArcelorMittal never directly gives an assignment to a Tranco operator. Berg provides safety and operating training before Tranco employees do their work. Berg would regularly tell Tranco operators to take their time when plowing snow because they do not know what is buried under the snow. Tranco only plows where necessary for Tranco's vehicles to get close to the tracks. The majority of these areas are near railroad track switches, and these areas are typically unpaved or dirt roads. Berg was aware that the area where Strominski struck the manhole cover was unpaved and may have had defects hidden by the snow. Tranco had plowed the area "hundreds, potentially thousands" of times before Strominski's incident. (Def.'s Ex. G at 55:19-21, ECF No. 41-7).

Berg further testified that, in general, objects that could be buried under snow at the Indiana Harbor facility include manhole covers, yellow poles, edges of roadways, and steel. Berg would communicate known defects to operators and would tell them to take extra caution with unpaved roadways. Strominski was aware that he needed to drive slowly due to potential defects buried under the snow. Berg signed the work authorization form on the night of the incident. Edward Medina filled out the "area hazards" portion of the form. Berg was aware of the manhole cover but did not warn Strominski about the manhole cover because Berg did not think that it was a safety hazard.

7

Many operators had previously plowed snow in that area, which was routinely plowed during any snowfall, without incident. Berg is not aware of any other instances of operators striking this particular manhole cover.

Strominski's engineering expert, Dean D. Button, testified that best management practices for the standard of care for utility excavations or engineering require either restoration of the pavement surface or posted warning signs of rough road for motorists. Button also testified that, based on review of site photos, the surface was not restored.

ArcelorMittal, through its Federal Rule of Civil Procedure 30(b)(6) designee, conceded that it would have been easier for ArcelorMittal to fix its uneven pavement than for Strominski to find and avoid the defect under eight to ten inches of snow.

## ANALYSIS

ArcelorMittal seeks summary judgment on Strominski's state-law negligence claim. The Court must apply Indiana law as the Indiana Supreme Court would apply it. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000). To prevail on a negligence claim, a plaintiff must show that the defendant owed him a duty, that the defendant breached that duty, and that the breach proximately caused the injury. *FSF Presidential Estates v. Grounds*, 997 N.E.2d 372, 374 (Ind. Ct. App. 2013) (citing *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind. Ct. App. 2004)).

ArcelorMittal presents its argument as three separate issues: the known and obvious nature of the raised manhole cover, Tranco's superior knowledge of the raised manhole cover and surrounding area, and the unforeseeability of Tranco's failure to protect Strominski against the danger presented by the raised manhole cover. However, all of these issues are different ways of addressing the sole element of negligence in dispute in this motion: breach of duty. *See Smith v.*

*Baxter*, 796 N.E.2d 242, 243 (Ind. 2003) ("[T]he comparative knowledge of a possessor of land and an invitee is not a factor in assessing whether a duty exists, but it is properly taken into consideration in determining whether such duty was breached." (citing *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990)).

A jury typically must determine whether there has been "a breach of duty, which requires a reasonable relationship between the duty imposed and the act alleged to have constituted the breach," so summary judgment is rarely appropriate in negligence cases. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 9 (Ind. 2010) "Only where the facts are undisputed and lead to but a single inference or conclusion may the court as a matter of law determine whether a breach of duty has occurred." *Id*.

Strominski's claim is based on premises liability. The Restatement (Second) of Torts, adopted in Indiana, subjects a landowner to liability for injuries to invitees caused by a condition on the land only if the landowner meets three requirements: (1) the landowner "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm" to the invitee; (2) the landowner should expect that the invitee "will not discover or realize the danger, or will fail to protect themselves against it;" and (3) the landowner "fails to exercise reasonable care to protect [the invitee] against the danger." Restatement (Second) of Torts § 343 (1965); *see also Smith*, 796 N.E.2d at 244 (applying Section 343 of the Restatement). The Restatement also provides that the landowner bears no liability if the harm is caused to the invitee "by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A (1965).

9

Courts have interpreted these Restatement sections in the context of a landowner's duty to its independent contractors and their employees. In general, the owner of property has a duty to "maintain the property in reasonably safe condition for business invitees including independent contractors and their employees." *PSI Energy, Inc. v. Roberts*, 829 N.E.2d 943, 957 (Ind. 2005) (citing *Merrill v. Knauf Fiber Glass, GmbH*, 771 N.E.2d 1258, 1264 (Ind. Ct. App. 2002)), *abrogated in part on other grounds by Helms v. Carmel High Sch. Vocational Bldg. Trades Corp.*, 854 N.E.2d 345, 346 (Ind. 2006). The extent of the duty is related to the circumstances under which the independent contractor is invited onto the land, *Bateman v. Cent. Foundry Div., Gen. Motors Corp.*, 822 F. Supp. 556, 563 (S.D. Ind. 1992), and the owner's duty to an independent contractor is not as extensive as the duty of an employer to furnish a safe workplace for an employee, *PSI Energy, Inc.*, 829 N.E.2d at 957 (citing *Merrill*, 771 N.E.2d at 1264). Further, "the appropriateness of safeguards by employees of a contractor is reasonably left to the contractors." *Id.* at 959. "[A] landowner who employs a contractor to perform specialized work . . . is entitled to rely on the contractor to comply with appropriate safety standards." *Id.*

"[A] landowner ordinarily has no liability to an independent contractor or the contractor's employees for injuries sustained while addressing a condition as to which the landowner has no superior knowledge." *Id.* at 961. "Facts showing only that a landowner knows of a condition involving a risk of harm to an invitee, but could reasonably expect the invitee to discover, realize, and avoid such risk, may be insufficient to prove breach of the duty." *Douglass*, 549 N.E.2d at 370.

ArcelorMittal argues that it cannot be held liable for Strominski's injuries because he was injured while performing the specialized work that Tranco was hired to do and because

10

ArcelorMittal had no superior knowledge of the raised manhole cover. Strominski argues ArcelorMittal is incorrect on both grounds.

Strominski argues that he was not injured by the condition that he was employed to address. In *Myers v. Bremen Casting, Inc.*, 61 N.E.3d 1205 (Ind. Ct. App. 2016), the court determined that the defendant had not presented enough evidence to show that the plaintiff, an electrician who developed mesothelioma after working near asbestos insulation and with products containing asbestos, was injured by the condition that the plaintiff was hired to address.

The relevant condition on the land that Tranco was hired to address was the snow cover. Unlike in *Myers*, there is sufficient evidence before the Court indicating that encountering objects under the snow is inherent in snow plowing, that Strominski knew to prepare for this possibility, and that Tranco instructed Strominski to take caution when plowing due to the chance of objects being buried under the snow. Strominski testified that he was taught to raise the front edge of a payloader's bucket in order to "roll over" objects buried under the snow. He also testified that he tries to get the front edge up two to three inches for this purpose. Tranco Foreman/General Foreman Ross Berg would regularly tell Tranco operators to take their time when plowing snow because they do not know what is buried under the snow. Strominski notes that Tranco was not hired to repair paving but does not dispute that objects buried under the snow are a hazard inherent in plowing snow. Tranco and Strominski both admittedly knew of the potential for objects to be buried under the snow cover and to allow for this possibility in plowing snow. Strominski was injured by the condition that he was hired to address.

Strominski also argues that summary judgment is improper because there is evidence that ArcelorMittal had superior knowledge of the raised manhole cover. Strominski's argument is

11

analogous to one raised in *Watson v. Ziegert* 616 N.E.2d 785 (Ind. Ct. App. 1993). In *Watson*, the plaintiff tried to establish a genuine issue of material fact by pointing to conflicting evidence of whether the defendant told the plaintiff that the television antenna that plaintiff was hired to dismantle was old, rusty, and dangerous (in the defendant's son's lay opinion). *Id.* at 786-87. The Indiana Court of Appeals held that summary judgment in the defendant's favor was properly granted because the defendant did not need to warn the plaintiff of the antenna's condition because the plaintiff was invited onto the property to dismantle the antenna, was experienced in dismantling antennas, and could easily observe the age and degree of rust on the antenna. *Id.* at 787-88. Thus, the court held, the defendant could not tell the plaintiff anything that he did not know, and the defendant could expect the plaintiff to take the proper precautions. *Id.* at 788.

Strominski argues that Tranco did not have superior knowledge of the raised manhole cover because, though Tranco employees were aware of the raised manhole cover, Tranco employees testified that they did not consider the raised manhole cover to be a hazard. Strominski asserts that the knowledge required by Restatement section 343A is knowledge of the condition and appreciation of the danger posed by the condition. *See* Restatement (Second) of Torts § 343A, cmt. B; *see also Jackman v. ArcelorMittal U.S.A. LLC*, Cause No. 2:12-cv-239, 2015 WL 789795, at *7 (N.D. Ind. Feb. 25, 2015) (quoting Comment B). However, *Jackman* does not concern an injury occurring while addressing the condition that the worker was hired to address. As stated above, Indiana courts have clarified that, when performing specialized work, a landowner is entitled to rely on the independent contractor to take appropriate precautions.

Here, similarly to *Watson*, no warning from ArcelorMittal to Tranco or Strominski was necessary. Tranco and Strominski were invited onto the property to plow snow, and both Tranco and

12

Strominski had years of experience plowing snow. The evidence shows that Tranco plowed the area at issue here hundreds, or perhaps thousands, of times before the event at issue. The pathway where the raised manhole cover is located is not a main roadway for ArcelorMittal. The snow cover was easily observable, so ArcelorMittal was entitled to expect Tranco and Strominski to take due precaution to protect themselves against the dangers presented in plowing snow, which Tranco and Strominski both testified includes the potential of striking objects buried beneath the snow cover. ArcelorMittal did not have superior knowledge of the raised manhole's condition and could not have told Tranco anything about it that Tranco did not already know.

Strominski was injured by the condition that he was hired to address, and ArcelorMittal had no superior knowledge of the raised manhole cover to give to Tranco. The evidence presented to the Court leads to the single inference that ArcelorMittal did not breach its duty to Strominski. ArcelorMittal is entitled to summary judgment in its favor.

Because oral argument is not necessary for the resolution of the Motion for Summary Judgment, the Court denies ArcelorMittal's request for oral argument on the motion.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant ArcelorMittal USA, LLC's Motion for Summary Judgment [DE 40] and **DENIES** Defendant ArcelorMittal USA LLC's Request for Oral Argument on Its Motion for Summary Judgment [DE 42]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant ArcelorMittal USA, LLC.

SO ORDERED this 17th day of July, 2017.

                                          s/ Paul R. Cherry
                                          MAGISTRATE JUDGE PAUL R. CHERRY
                                          UNITED STATES DISTRICT COURT